Samuel Sherbrooke Corporate v. Mayer Mr. Benzinger Good morning, Your Honors. This is Dillon Benzinger from McGuire Woods on behalf of Appellant Samuel Sherbrooke Corporate, Ltd. and Samuel Goldner. May it please the Court, this appeal concerns a textbook example of trade secret misappropriation that the affilees have spent quite a bit of time and effort and money trying to disguise. Each of the appellees were officers and directors of Sherbrooke and during their employment they either created or implemented a unique software program that allowed Sherbrooke to more competitively offer profitable insurance products to nursing homes around the country. Each appellee during their employment or before their employment signed. Did they both have, or excuse me, did all the defendants in addition to being officers and directors, did they also have ownership interests? They were minority owners of the business, but they. Is that true for all of them? I know some of them were, but were they all minority owners? My recollection is that at least Queen and Mayer were. Walker may have been as well, but for purposes of this appeal, what's important is that they were all officers and directors of the company, meaning they had the keys to the company. They were able to control the information within the company and they had access to it on a day-to-day basis. So the, it looks like you have two issues here. One is misappropriation, but the threshold issue is, is there a trade secret? And the district court found that that had been inadequately pled that the complaint had only pled the language of the statute. So why don't you start there because if you don't have a trade secret, you know, there's, we don't need to deal with misappropriation. Absolutely, Your Honor. And the complaint absolutely did not simply allege the language of the statute. Judge Boyle below respectfully made the same analytical mistake with respect to both the confidentiality and protectability element and the misappropriation element. He focused myopically on a single allegation in the complaint, decided that complaint was too conclusory to support the claim, and ignored allegations throughout the complaint that supported that conclusion. So with respect to the confidentiality of the trade secret here, this is the picture that the complaint paints. The software was created by Mr. Walker, one of the appellees, who Sherbrooke hired for the specific purpose of creating. There are two places in the complaint where it's pled that Sherbrooke used all commercially reasonable measures to ensure that the proprietary software remains confidential, provides unique value. So how does, that's what the statute requires you to plead. What ties that to any other allegations in the complaint? Sure, that allegation is in the complaint. That's a guidepost that you can view the rest of the allegations through. But I'm thinking you would agree if that was all there was, that would not be sufficient. Sure, if that was all there was, that would not be sufficient. But that's not all there is in the complaint. The complaint makes very clear how this proprietary software was created. It was created in-house by an employee designed or hired specifically to do that. It gave the company a competitive advantage over its rivals in the industry. It spent over a million dollars to develop this proprietary software. And the second it learned that the software had escaped the control of the company, it sent a cease and desist demand to the appellees for them to return the property to the, to Sherbrooke. Which paragraphs of the complaint tie the confidentiality agreement to the proprietary software? So there is an allegation at paragraph 74 of the complaint, this is JA-22, that says that the appellees violated the confidentiality provision by using the proprietary software. It's not a very large logical leap to determine that if someone has violated the confidentiality provision by using the proprietary software, that the proprietary software falls within the meaning of the confidentiality provision. Even if we accept all that is true, how does that translate into pleading all commercially reasonable measures were taken? Isn't that what you're required to plead, much less show? That's right, Your Honor. And the complaint does plead that commercially reasonable efforts were taken. I'll point you specifically to the employment agreement that includes confidentiality provisions and invention provisions. Those provisions are set up. Show me the paragraph here in the complaint that gives us the nexus that any other action amounts to all commercially reasonable measures. Well, I think what Your Honor is driving at is, are there multiple commercially reasonable measures? And the answer to that question is, there doesn't need to be. Under clear Fourth Circuit case law and case law from outside the circuit that we have cited in our briefs, only a confidentiality agreement, only a... Theoretically, I would agree with you. But I guess what I'm looking for is where the complaint pleads the confidentiality agreement is all the commercially reasonable steps we need to take because... Okay. I have two responses to that, Your Honor. The first is the collection of allegations in the complaint make clear that under the circumstances, these were reasonable. And here's how it does it. This was a small company. It only had a few employees. They were direct colleagues and personal connections of Mr. Goldner. And he went beyond just a handshake agreement. He required each of them to sign these very strict confidentiality provisions that are enforceable under the circumstances. They make very clear that should Sherbrooke employees misappropriate the proprietary confidential information of the company, they violated in terms of their contract, and they can be liable for contract and trade secret violations. The second point I'll make is that there's no basis in the law for the idea that companies need to use the most perfect commercially reasonable measures available to maintain the secrecy of the trade secret. Can I ask the question to... So Judge Agee's question I took to be you got to connect what was done. And I take what you say is done here in the complaint is that you've alleged the software system was confidential. It's covered by the confidential provision in the employment agreement. But that's really all that you've alleged that you did. And then there's a cease and desist letter. So maybe that's one more piece after the fact. I take Judge Agee's question to be but what you need is to have the because, right? Why that alone is itself reasonable? And you were trying to answer that. I thought your response was going to be that's the legal conclusion or that's the conclusion for the jury to draw. All we've got to do is allege the facts that are reasonable. You include the conclusion here that you took all reasonable means. But that doesn't really mean a whole lot. But you've alleged the facts of what you did. Whether that's reasonable is sort of for the jury to decide. That's exactly right. And Judge Agee, apologies if I misunderstood the point of your question. But I agree completely. It's a quintessential fact question. If a court is to determine how reasonable a secrecy measure was, was it reasonable enough? That is a fact question to be resolved after the pleading stage, after discovery has been developed. Cases like the Demarcian case in the Fourth Circuit hold that to be true. And I'll even point to the Athelese cases, Diamond Power and Amerigas, which they've cited on this reasonableness issue. Those were decided in the summary judgment stage. We've looked a lot, maybe not as much as we should, but we've looked a lot, you know, gone beyond bare bones of the statutory pleading. And we have yet to find a case, maybe you can supply one, where there aren't multiple actions for the confidentiality agreement. There are software safeguards that are undertaken. So, it's hard to find a case that really fits it where essentially the only thing you've got is the confidentiality agreement. I'll point you to two cases, Your Honor. All right, that'd be good. The first is from the Seventh Circuit. It's the Learning Curve case that we've cited in our briefing. That case, the Seventh Circuit based a ruling overturning the district court that the secrecy measures were adequate to confer DTSA protection on just a verbal confidentiality agreement that took place during a business meeting between two companies. There was no paper that controlled that meeting. There was no written confidentiality agreement. And there was no other reasonable measure to safeguard the secrecy of the trade secrecy issue. All it was was a handshake agreement. And the Seventh Circuit held that the jury would have been entitled to fine for the trade secret plaintiff in that case based on those reasonable safety measures. The second case I'll point you to is the Hawkins case. Give me Hawkins first. Sure, Your Honor. Hawkins is from the Western District of Virginia. The facts of that case are fairly similar to this one. It involved a small company that created a software product. One of the officers and directors of that company took the software to another company that him and his friends owned, used it to compete directly against the company that he worked for, and the court held, based on the existence of an employment agreement that had confidentiality provisions in it and nothing else, that the trade secret received DTSA protection. The MAI systems case, which is the Ninth Circuit case in our briefing, also holds, reaches a similar conclusion. And the principle that I took out of Learning Curve is that it's just highly context-specific what is reasonable. And it would be a very different question of what is reasonable for a one-man or a two-man shop with trade secrets than it might be for Coca-Cola's recipe for the entity, because the costs and benefits are sort of the quintessential jury question to determine whether these were reasonable in light of the relative costs and the relative benefits of doing what was done. Right. Absolutely. It's a reasonableness analysis. Reasonableness is a fact question. My point in response to Judge Agee's question is that it was an error for Judge Boyle to hold below that as a matter of law, it was unreasonable to use only confidentiality provisions in the contract. That's not the case. What the court should have done is exactly what you, Judge Richardson, are suggesting. Take a look at all the facts that are alleged in the complaint. Take stock of what would have been reasonable under the circumstances and make a decision based on the allegations. What the court did not do is consider at any point whether this decision should be made after a full factual record has been developed in discovery. And that's exactly what we ask that the court should have done. We ask what this court demands for that court to do. And is there any heightened pleading standard in trade secret cases? There is under North Carolina state law. There is not under the DTSA. Our claim is under the Federal Defend Trade Secrets Act claim. Cases like HESCA that we've cited in our briefs make clear that there is a difference in the level of pleading specificity that's required in federal law and in state law. It looks like the court below held us to the artificially high pleading standard under North Carolina state law because Judge Boyle cited to the BRX case and in a parenthetical to that citation he said that the two statutes are substantially similar. That was right after he faulted us in his opinion for failing to allege misappropriation with enough factual enhancement. That all looks to us like he held us to the North Carolina standard which does not apply here. HESCA makes clear that the two standards are different. All that governs here is normal Rule 8 plausibility standard and the allegations of the complaint with respect to misappropriation are more than enough to clear that hurdle. All right. If we assume you have a trade secret, do you want to tell us anything more about the misappropriation? Sure. We spent most of the time on the trade secret. Sure, and I'm happy to address misappropriation more in rebuttal if that's what needs to happen, but we think that Judge Boyle made the same mistake with respect to misappropriation that he did with respect to the trade secret. He focused on that conclusion that's supposed to serve only as a fine point on the allegations in the complaint, ignored the rest of the allegations and determined that the allegations were insufficient to state a claim for trade secret misappropriation. And once again, here is what the complaint says about how the trade secret was misappropriated. Mr. Walker was hired specifically to create this trade secret in-house. He had the technical knowledge to create and operate this trade secret. He and the other two appellants used this trade secret on a day-to-day basis inside Sherbrooke in order to run the company. And the trade secret itself, the proprietary software, has an extremely narrow purpose. It's an important one to the company, but it has an extremely narrow purpose. All it does is allow insurance companies that write policies to nursing homes to better assess risk and better write insurance policies that are competitive in the market and profitable for the insurance company. Now, when they started their own company, left Sherbrooke and retained control over literally all of the corporate records and controls that Sherbrooke possessed, the bank accounts, the email server, the business records, they took with them all of those things to this competing company and stood up a company that competes directly against Sherbrooke for the same customers operating the same business model and in the same geographic regions. All of that together is more than plausible enough to show that the competing company misappropriated the trade secret at issue here. All right. Thank you, Mr. Binziger. You've got some rebuttal time. Mr. Pardue. Thank you, Your Honors. May it please the Court, I'm David Pardue. It's my first time on the Fourth Circuit, so I'm pleased to be here. I appreciate everybody coming under the circumstances. Judge Richardson, you were on the panel in the Cisco Machinery v. DCS case that Judge Boyle ruled on and in which Judge Wilkinson's opinion talks about how that wasn't enough to plead the trade secrets case. I noticed that you talked about context. That is important here. One of the things that's a fact in this case that is not disputed is that Sherbrooke is a captive insurance company. It is a North Carolina captive insurance company. In our answer, we're on a Rule 12c motion, so what's in our answer is in the record, and we say in there, they can only write policies for Sam Goldner's nursing homes. So, in the hearing below, Judge Boyle was quite interested in, you know, how is there competition? There can't be competition because Sherbrooke is a captive insurance company. Assume I agree with all that. Why does that matter at all for the trade secret misappropriation? Just connect that for me. I understand that, like, conceptually, your colleague on the other side wanted to talk about competition. You want to say there's no competition, but it's not obvious to me why that matters for the trade secret misappropriation. If you had taken this software and gone to Hawaii, where there's no sense of them being there, and you had used it there, it seems like that would be a trade secret misappropriation. Maybe there are no damages. Acknowledge that. But why does that matter for the appeal? Well, I think it does matter in that, you know, the first prong is, is there a trade secret? And the Cisco case talks about Twombly and, you know, what Twombly means. That was obviously an antitrust case. But the case is saying, you know, that you have to plead something. Counsel, let me ask you the kind of dissecting Judge Richardson's question. Does the fact that there's a captive insurance company have any impact on the threshold question of whether or not there's a trade secret, putting aside the question of misappropriation? Well, in reality, you could not be having a captive insurance company and allege that somebody has a software that helps you price insurance policies when the only insurance policies that you're dealing with are insurance policies for Sam Goldner, who is the insured. It just doesn't make any sense. I do understand how you're saying, well, how is it relevant? I totally understand. This is a great jury argument. I totally understand the point I think you're trying to make, which might well be super interesting at some point in the future. But what I don't understand is, why is it relevant to whether they took reasonable means to keep the software confidential? Do you agree it has nothing to do with that? I think it's not relevant to whether they took reasonable means or not. Can you then sort of switch for a minute, because I'm sort of interested in this question of, what more were they required to do? So they had to take reasonable measures. From your perspective, what else did they have to do in order to have plausibly alleged that they took reasonable measures? Did they need a password? What else do you think they needed to allege in order to plausibly have alleged such that a jury could find that what they did was reasonable? Great question. So first, the question is, can they just say, hey, there's a confidentiality agreement, so we took commercially reasonable measures? Possibly they could, actually. You could have a 40-page confidentiality provision. Well, that's what they did here. That's the allegation. Why isn't the allegation about the confidentiality agreement sufficient in the context of the complaint and the stage of the litigation we're at? Great question. Judge Ege, I noticed earlier you were talking about how that lending case, it seemed like nobody there had ever done a real estate deal. I do this for a living. I do these contracts. I do these cases. So they have in here a snippet of an alleged contract that says you cannot disclose confidential information. There is no definition whatsoever in the pleading about what's confidential. Can you go back to my question, which is, what else were they required to do? Not they could just do this or they could do that, but tell me what they need. You say this fails. What is the paragraph that they needed that would have, you say that you do this, and so what is it that they needed to say? Give me the three sentences or one sentence or one phrase, or tell me the two and a half pages that they needed to say in order to plausibly allege that what they did was reasonable. Great question. They need to say, these are reasonable measures because there's a confidentiality agreement. Wait, but that's a conclusion, right? Wait, stop. Because that doesn't help you. So that's just the conclusion of whether they're reasonable or not. They give the conclusion. They say we took reasonable measures. They also tell us what they did. That is this. They don't have to explain why that is itself reasonable. That's not what the pleading standard requires. This is the fact-based pleading. So what I'm asking is, what else were they required to do? Like a password, like a, you know, I don't really know what else it is that you want them to have done. I'm trying to figure out, what is it that you wanted them to have done that they needed to do in order to pass the pleading stage of reasonable measures? They have to say what is confidential information. It's a capitalized term. I understand that. So in your view, if they had said, just to take as an example, right, if they had said that the proprietary software is the confidential property of Sherbrooke, like that would answer that question, right? Because we would now know. In the contract, yes. All right, so in case you're wondering, I'm just reading from paragraph 44, right? So like they said that. So what else did they require them to say? So what else was needed to be in the complaint to plausibly allege that they took reasonable measures? Like tell me, like, what are the words that they needed to include that aren't there? So in paragraph 44, how does Walker know, they just say it was confidential? The contract doesn't say it was confidential. It doesn't say anything is confidential. First of all, Walker. The underlying question is whether or not that's a pleading defect or whether or not that would be a defect on the merits. It seems like to me that's the issue. It's a pleading defect because you cannot. Well, do you agree with opposing counsel that there's not a heightened pleading standard applicable here? Judge Boyle did not use a heightened pleading standard. And you agree that there's not a heightened pleading standard for the Defense of Trade Secrets Act, correct? Under CISCO, yes. Under CISCO, Twombly, Iqbal, not enough. Reasonable measures in the common law which is developed because there are cases dismissing lots of plaintiffs for saying we had reasonable measures. No, you didn't. So they exist. Give me the best example of a case you've got that says that we should be doing that at the Rule 12 stage, right? Because when I read the cases, they all seem to say pretty clearly some version of that only in extreme cases can what a reasonable precaution be determined as a matter of law because the answer depends on balancing the costs and benefits that vary from case to case. It's a jury question. So what's the best case that tells me that we should be determining what is reasonable at the Rule 12 stage? Well, Diamond Power from Georgia that we cite and there's another case that we cite, you can't just plead that there's a confidentiality agreement under that case law which is where I practice. So that's a barrier. I thought you started earlier by saying you could just plead a confidentiality agreement. You just think they didn't do a good job here. No, you can't just plead confidentiality agreement which is all they said, confidentiality agreement. You have to say where is there a statement that something, anything, is actually confidential? And to answer your other question, the case law has developed that there's three kinds of ways that you can do this. One is through contract. Another is through what they call physical barriers. And then the third is through login, password, etc., etc., etc. All of the cases have combinations of that. And what do you think they have? Did they have to have a password or a physical barrier? Did they need a locking key on the office? I assume they probably had one. But maybe if they had alleged that, right, our front door has a lock and you have to have a key to open the front door to our business, would that in your mind now be reasonable? It would be better. But the fact that maybe they don't have any door, they work outside means they weren't reasonable? That can work. But my hill that I'm dying on is that you can't just say you can't disclose confidential information. You must have more than that to be a reasonable measure. There is no case that I have been able to find where the only thing that's fled is they had a contract that said confidential information, but it doesn't have any definition of confidential information. Let me take you back to one of Judge Richardson's earlier questions. Do you have anything in a Rule 12 context, not summary judgment, not appeal after verdict, but in a Rule 12 context that basically takes the position you have put forward? Yes. The cases in our brief are dismissal cases. Well, tell me what's the best one. The example you gave me was Diamond Power, right? When I ask the question, Diamond Power is a summary judgment case. So how about find one that's not a summary judgment case? Sorry. Excuse me. So dismissal, Design Gaps case, which is 2023 Westlaw 810-3156, and the Cisco case, Judge Richardson, that you were on, that was a dismissal case. Vanguard Group v. Snipes.  And Design Gaps is a Western District of North Carolina case? Yes. It's a district court case. Yes, Judge. It's a district court case. Oh, and so is Vanguard. And your point of design, you think Design Gaps stands for the proposition that pleading an employment agreement with a confidentiality provision, but nothing else, is insufficient to have alleged reasonable measures? Yes, because... When I go to Design, I don't have it in front of me right now, but when I go to Design Gaps, that's what I'm going to find. Well, you know, every case has its own facts, et cetera, but there's no... I understand what you're saying, that if I'm looking for this proposition, that we should dismiss the complaint at the Rule 12 stage because it's insufficient to allege a confidentiality agreement to reasonably protect a trade secret. The case you want me to look at is Design Gaps. Well... I'm just trying to... I want to make sure that I look at... Those are the cases that are dismissal cases that are within the Fourth Circuit. There are legion dismissal cases... That do the other things that Judge Richardson said? There are Rule 12 dismissals involving pleading about a confidentiality agreement and trade secrets. I believe so. Just, you know... The fact that you can't look at any of this and actually find that proprietary software is their definition, inside of their definition of confidential information, is the problem. I mean, they're claiming there's a contract. They have a capitalized term. All right, so when I look at Design Gaps, just for whatever it's worth, right? At least, I confess, I'm reading it pretty quickly, right? But it doesn't seem to have anything to do with reasonable efforts to protect the information. They failed to identify what information, right, was confidential, right? But we don't have that problem. We know it's the software, right? We know that answer. We only know that because they say so. We don't know it... That's why it's called an allegation in a complaint. There's no allegation that they told him it was confidential. There's no allegation that he had any notice that it was confidential. There's no allegation of what it was. There's no allegation... They claim in paragraph 74 that we were taking employees and, you know, trying to take them away. There's no allegation that those employees did or did not have access to what is considered a software. All right. So, okay, so to be fair, I did find what you're referring to. They said they didn't take reasonable efforts because they actually published the information that they claimed was a trade secret. That's not saying that an employment agreement is insufficient. That's saying that if you publish the information, you can't then say it's confidential. Your Honor... That makes pretty good sense to me, right? But that seems like a motion to dismiss question. Right? If it's been published, it's not confidential. But that doesn't address the question we have. Well, they don't say whether it's been published or not. They just say there's a software and there's a contract. They don't say they told us what was confidential. They don't say that... I think that's Judge Richardson's point that the fact that this wasn't published and they don't say that, it distinguishes it from the case that you cited to us a minute ago. But there is a Ninth Circuit case that says that allegations about a confidentiality agreement are sufficient to get beyond the pleading stage in a trade secret case. Yes, that's a 1993 case. It's the only one that's out there. And the case doesn't discuss... It says there's an agreement. It doesn't discuss what the agreement says. It doesn't discuss... And so I would contend under the case law of Twombly and its progeny that that case would be decided differently now or should have said something about what confidential means. It's a 1993 case, so in 32 years, the Ninth Circuit has not reversed it or no other court has said it's wrong. I don't think that anybody's considered it, but that case exists. If that's what the Fourth Circuit says is needed to be pleaded for reasonable measures, then that option is available to you. I would suggest that in Cisco, they talk about how slippery trade secrets is. It's very difficult. We have to have something in there. Just saying we have something that says you can't use confidential information and, oh, by the way, this thing was confidential, that's as notice-y pleading as I can get having practiced in this specific type of, you know, tort as anywhere. And I do not believe that there's any case other than that one case in the Ninth Circuit that says otherwise. And on the other hand, in defining what is a reasonable basis, there are cases that, and some of them may be summary judgment cases, but at any rate, they say, here's what is necessary to have one. And given that case law, if I was drafting a complaint, I would say, now, I think probably the definition of confidential information in whatever this contract is must be pretty bad for them because they left it out. It's a defined term in a contract. And, you know, there's just nothing to go on that says this software has been protected. They claim themselves that these guys were running the company themselves. By the way, Walker is not an officer and a director. And they don't even, all of these allegations have to do with Queen and Meyer who were not the people hired to do the software. Mr. Pardue, in your remaining time, let's just assume there's a trade secret. That's the sign that we assume it. Tell us in your remaining minute about misappropriation because that's a separate finding. The court held that there was essentially just an information and belief allegation. You know, at that, okay, these guys are selling insurance policies. They must be using the same software or something related to the same software as the software that was written before. I would argue that that is too speculative to pass Twombly, Cisco, or any other reasonableness standard of what you're alleging. You're essentially saying, well, because it looks that way over there, then it must be this way. Twombly's about that in a different context. It's saying they were arguing conscious parallelism. Their price is this, our price is this, so that price must be collusion. Here they're alleging, well, you must be using a software to sell insurance policies because you work for us, and that's what that software did. They don't really say what they actually think is going on with my clients. Helios, by the way, is a captive insurance manager company. It's a defendant. That's just something that you have to have in North Carolina if you have a captive insurance company. It's just managing the affairs. All right. Mr. Pardue, you're over time. Is there anything you want to tell us very, very quickly to sum up? If the standard is, if you just say you have a confidentiality agreement without any need to define what the things are that are confidential, that is going to be a major problem in business because anybody can say that. Anybody can say you signed something, you said confidential, and therefore, you know, everything was confidential. I mean, the Cisco case is saying, based on what they're talking about in that case, all of the business' information is confidential. Same thing here. Based on this, what's confidential information could cover everything possible. Now, they're saying that it covers the software, but there's no, they don't include the contract provision. I think we've kind of plowed that ground. So that's... Okay. I think we've kind of plowed that ground. I appreciate your time. Yes, sir. Thank you very much. And now we'll hear Mr. Benzinger. You've got some rebuttal time. Thank you, Your Honor. I'd like to clear up a couple of factual points and then move to a couple of the cases. I heard counsel say that Walker was not an officer and director of Sherbrooke. Paragraph 40 of the complaint alleges that Walker was hired specifically to be the chief technical officer of Sherbrooke. We heard a lot about the Cisco and Design Gaps cases. I'll start with Design Gaps because Judge Richardson went there already. You're correct, Judge Richardson, that the primary reason the court dismissed that trade secret claim is because the plaintiff in that case alleged the existence of a trade secret just by listing very vague types of things that could be trade secrets, business records, customer lists. We've far exceeded that sort of pleading here. The Cisco case is, it takes a little bit more in-depth analysis to understand why it's distinguishable, but it absolutely is distinguishable here. That case involved Cisco, the plaintiff, that filed a trade secret action against a third-party distributor of its products in the United States. The misappropriation alleged was that former employees had access to electronic records, took them to a competitor, and used it at the competitor to compete against Cisco. The court dismissed the trade secret claims not because they were insufficient to state trade secret misappropriation claims against those employees, but because Cisco sued the distributor, and the distributor was not the party that did the misappropriation. In fact, the district court there made clear that the allegations as to the distributor were insufficient, as opposed to, that's a quote, as opposed to the former employees. Here, Sherbrooke and Goldner didn't make that same mistake. They didn't sue a third-party uninvolved in the misappropriation. They sued the exact employees that did the misappropriation. I'd also like to talk about the argument that somehow the allegations about the tie between the confidentiality provision and the proprietary software are insufficient at the pleading stage. I think I covered this in the opening presentation, but there's allegations up and down the complaint that show how this proprietary software was created, why it was confidential to Sherbrooke, the benefit that its confidentiality gave to Sherbrooke, and as I mentioned in response to Judge Stacker's question, the fact that, or the allegation that the employees violated the confidentiality provision by using the proprietary software. My position is that those allegations are more than enough to create that nexus that the counsel was asking for, but I'll just remind the panel that we also get the benefit of all reasonable inferences that can be drawn in our favor at this stage because this is a Rule 12 motion. So if the court's decision is that that tie is not explicitly made, it is extremely reasonable to infer that the confidentiality provision covered the one piece of proprietary software that Sherbrooke spent a million dollars to create and hired employees specifically to carry out within Sherbrooke. One piece of just broader factual context I'd like to give the court is that Sherbrooke was unable to meet this heightened pleading standard that Judge Boyle held us to below because the employees were the ones in control of all of this information. Now again, the lead position is that under the normal Rule 8 standard, these allegations are sufficient, but to the extent this court, like Judge Boyle, wants us to meet some heightened pleading standard that does not actually apply in the DTSA context, it's important to keep in mind that at the time we filed the complaint, we were still in a world where the employees were in control of the bank records of Sherbrooke, in control of the business records of Sherbrooke. You'll see in the transcript in the motion for judgment on the pleadings hearing below that eight months after we filed this complaint, we didn't even have access to our e-mails back. They still had our e-mail server locked down and prevented us from getting the information that we would have needed to satisfy what is essentially a Rule 9 heightened specificity, heightened particularity standard. So it would have been impossible for us to meet that standard because the defendants that we were suing were preventing us from doing so. So with that factual context in mind, I ask that this panel reverse the decision below and remand for further proceedings and allow the case to proceed to discovery. Thank you. Thank you very much. I'll ask the clerk to adjourn court for the day and we'll come down and greet counsel.
judges: G. Steven Agee, Stephanie D. Thacker, Julius N. Richardson